IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**PORT OF PORTLAND,**

        Plaintiff,

    v.

**MONSANTO COMPANY et al.**,

        Defendants.

No. 3:17-cv-00015-PK

OPINION AND ORDER

**MOSMAN, J.**,

On April 18, 2017, Magistrate Judge Paul Papak issued his Findings and Recommendation ("F&R") [43], regarding Defendants' Request for Judicial Notice [15], Defendants' Supplemental Request for Judicial Notice [37], Plaintiff the Port of Portland's ("the Port") Motion to Strike Defendants' Request for Judicial Notice [33], and Defendants' Motion to Dismiss [14]. Defendants objected [46] to the F&R and the Port responded [47].[1] For the following reasons, I ADOPT the F&R in part.

## LEGAL STANDARD

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to

---

[1] Defendants filed Objections to the F&R [45] and subsequently filed Corrected Objections [46]. I considered only the objections and arguments made in the Corrected Objections [46] for the purposes of this Opinion and Order.

make a de novo determination regarding those portions of the report or specified findings or recommendations as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny with which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

## DISCUSSION

### I. Defendants' Requests for Judicial Notice and the Port's Motion to Strike

Judge Papak recommends that Defendants' Request for Judicial Notice [15] should be GRANTED in part, DENIED in part; Defendants' Supplemental Request for Judicial Notice [37] should be DENIED in part as moot and DENIED in part on the merits; and the Port's Motion to Strike [33] should be DENIED in part as moot and in part on the merits. As to these recommendations, Defendants appear to only disagree with Judge Papak's finding that "it would be inappropriate for the court to take judicial notice of the facts contained within . . . the *Arkema* Documents . . . because those documents contain no facts not already in the record before this court which can reasonably be construed as adjudicative in connection with the Port's claims in this action." It is unclear whether Defendants actually object to this finding, however, because they only discuss it in a footnote, simply stating they "disagree" without explicitly objecting to the finding. Defendants did not object to any other findings or recommendations related to their requests for judicial notice.

I have reviewed Judge Papak's finding and recommendation as it relates to judicial notice

of the *Arkema* Documents, and I agree with his recommendation. I also agree with Judge

Papak's other findings and recommendations related to Defendants' requests for judicial notice

and the Port's motion to strike. Accordingly, I ADOPT this portion of Judge Papak's opinion as

my own. Defendants' Request for Judicial Notice [15] is GRANTED in part and DENIED in

part; and Defendants' Supplemental Request for Judicial Notice [37] and the Port's Motion to

Strike [33] are DENIED as moot in part and DENIED on the merits in part.

## II. Motion to Dismiss

Defendants moved to dismiss all of the Port's claims on various theories. Judge Papak

recommends that I GRANT the motion to dismiss as to the Port's common-law indemnity claim

and claim for attorney fees. Neither party objects to Judge Papak's F&R as it relates to these

claims. After reviewing Judge Papak's analysis, I agree with his findings and recommendations

and DISMISS the claims without prejudice. [2]

As to Defendants' motion to dismiss the Port's remaining claims, Judge Papak

recommends that I DENY the motion. Defendants object to Judge Papak's recommendation that

I deny their motion to dismiss the Port's public nuisance, products liability, negligence, and

trespass claims. They argue that these claims should be dismissed because (1) they are untimely

and (2) the Port has failed to state a plausible claim for relief on the merits of each claim. In

addition, Defendants object to Judge Papak's finding and recommendation that the Port may seek

damages for its costs in complying with regulatory requirements of the Clean Water Act. I

consider each set of objections in turn.

---

[2] Defendants objected to Judge Papak's finding that the common law indemnity claim is not preempted by
CERCLA. Because the common law indemnity claim has been dismissed as unripe, I do not reach the merits of
Defendants' motion to dismiss the claim on the grounds that it is preempted by CERCLA. I, therefore, REJECT
Judge Papak's findings and recommendations as related to the question of whether the common law indemnity claim
is preempted by CERCLA.

**A.  Whether the Port's Tort Claims Must Be Dismissed as Untimely**

The Port seeks to hold Defendants liable under multiple tort theories.  Specifically, the Port has brought claims for public nuisance, negligence, trespass, design defect, and failure to warn.  To the extent these claims are "product liability civil actions" under O.R.S. § 30.900, they might be subject to the statutes of limitations and repose contained in O.R.S. § 30.905.  Indeed, none of the parties disagree that the design defect and failure to warn claims are product liability civil actions.  As such, at least two of the claims could be subject to the timeliness requirements of § 30.905 if they accrued after 1977.  *See Marinelli v. Ford Motor Co.*, 696 P.2d 1, 2 (Or. Ct. App. 1985) (explaining that the product liability statute only applies to claims that accrued after 1977).  Defendants argue that both claims—as well as any other claims that are actually "product liability civil actions" under § 30.900—are untimely under § 30.905 and should be dismissed.

Judge Papak recommends that I deny Defendants' motion to dismiss the Port's tort claims on the theory that they are time-barred under the statute of limitations and the statute of repose found in § 30.905.  Judge Papak determined they cannot be dismissed at this stage of the litigation as untimely because there is a question of fact regarding when the claims accrued.  Because the claims cannot be dismissed as untimely, he left open the question as to whether the common-law tort claims are actually "product liability civil actions," as defined by § 30.900.

Defendants object to Judge Papak's findings and recommendation for two main reasons.  They argue Judge Papak (1) erred in his analysis of the rule for determining when the tort claims accrued under § 30.905; and (2) erred in failing to conclude the public nuisance and trespass claims are subject to the statutes of limitations and repose found in § 30.905.

**1.  Timeliness Under the Statutes of Limitations and Repose**

Judge Papak found that there was a question of fact as to whether the Port's claims are untimely under Oregon law, and therefore, the Port's claims could not be dismissed at this stage of the litigation regardless of whether they are subject to § 30.905. More specifically, with regards to the statute of limitations, he determined that the Port is not subject to the two-year statute of limitations set out in § 30.905(1) because it is a public corporation, which he found to be exempt from the statute of limitations provision in § 30.905(1). In addition, while he found that the Port was subject to the statute of repose under § 30.905(2), he determined that there was a question of fact as to when the Port's claims accrued, which also precluded their dismissal under that theory. Defendants object to these findings and recommendations, and I consider each in turn.

### a. Statute of Limitations

Under Oregon law, for any product liability civil actions that accrued after 1977, plaintiffs have two years to bring a product liability civil action from the time when it accrued. Or. Rev. Stat. § 30.905.[3] That provision became effective on January 1, 1978 and it "applies only to causes of action, claims, rights or liabilities accruing after December 31, 1977." *Marinelli*, 696 P.2d at 2. There are essentially two issues at play concerning the statute of limitations provision. The first issue is whether the Port is exempt from the provision, either by statute or under the common-law. If the Port is not exempt, then the second issue is whether it is clear from the Complaint that the Port's claims are untimely based on the statute of limitations.

For the reasons explained below, Defendants' Motion to Dismiss [14] the Port's product liability civil actions on the grounds that they are barred by the statute of limitations is DENIED. Defendants have leave to renew these arguments at summary judgment.

---

[3] The statute of limitations provision in § 30.905 was included in subsection (2) of the 1977 version of the statute. *See* Or. Rev. Stat. § 30.905(2) (1977). The statute of limitations provision in § 30.905 is currently found in subsection (1) of the statute. *See* Or. Rev. Stat. § 30.905(1) (2010).

i. Whether the Port is Exempt

In response to Defendants' motion, the Port argued that it is exempt from the statute of

limitations provision of § 30.905 because it is a public corporation and O.R.S. § 12.250 renders

§ 30.905 inapplicable to public corporations like the Port. Judge Papak disagreed with the Port's

argument based on the Oregon Supreme Court's analysis in *Shasta View Irrigation District v.*

*Amoco Chemicals Corp*., 986 P.2d 536 (Or. 1999). There, the Oregon Supreme Court

specifically concluded that § 12.250, which exempts certain public entities from some statutes of

limitations, did not apply to the statute of repose provision in § 30.905. *Shasta View*, 986 P.2d at

540. Although the court in *Shasta View* did not specifically consider whether § 12.250 exempted

public entities from the statute of limitations provision in § 30.905, Judge Papak determined that

it did not. But Judge Papak, based on his interpretation of *Shasta View*, found that the Port was

exempt from the statute of limitations provision in § 30.905 under the common law rule that

general statutes of limitations do not run against public corporations of the State of Oregon

except where expressly provided. Defendants object to Judge Papak's latter finding that the Port

is exempt from the statute of limitations provision in § 30.905 under Oregon common law.

As an initial matter, I agree with Judge Papak that § 12.250 does not render the statute of

limitations provision in § 30.905 inapplicable to the Port. In *Shasta View*, the Oregon Supreme

Court considered several questions that were certified from the Ninth Circuit related to whether

public corporations were subject to the *statute of repose* found in § 30.905. *Id.* at 538. While the

Court did not address the exact question of how § 12.250 applies to the *statute of limitations*

provision in § 30.905, I agree with Judge Papak that the court's analysis in *Shasta View* suggests

that the Oregon Supreme Court would not find public corporations to be immune from the statute

of limitations provision in § 30.905 based on the immunity granted under § 12.250.

The text of O.R.S. § 12.250 states that the "exemption contained in that statute unambiguously refers to 'the limitations prescribed in this chapter.'" *Shasta View*, 986 P.2d at 540 (citation omitted). Thus, "unless some other statute were to make the exemption contained in ORS 12.250 applicable to a proceeding outside ORS chapter 12, that exemption applies only to the limitations contained in chapter 12." *Id.* Section 30.905's statute of limitations provision does not incorporate or refer to the exemption stated in § 12.250. Accordingly, like the Oregon Supreme Court found regarding the statute of repose, public corporations are not exempt from the timeliness requirements of the statute of limitations found in § 30.905. *See id.* As such, I ADOPT Judge Papak's finding that the Port is not exempt from the statute of limitations found in § 30.905 on the basis that, as a public corporation, § 12.250 exempts the Port from being subject to such statute of limitations.

I do not agree, however, with Judge Papak's finding that the Oregon Supreme Court held in *Shasta View* that public corporations are exempt from the statute of limitations provision in § 30.905 under Oregon common law. In my view, the *Shasta View* court did not determine whether the common law rule exempting the government from general statutes of limitations applies to the statute of limitations provision in § 30.905. The court in *Shasta View* simply noted that there is a common law variation of § 12.250, which is the principle that general statutes of limitations do not run against the government unless the statute "otherwise expressly provide[d]." *Id.* at 540. And the dissent raised the issue of how the common law rule impacts § 30.905 as a question left unanswered by the majority opinion. *Id.* at 549—56 (Durham, J., concurring in part and dissenting in part). Accordingly, *Shasta View* does not definitively resolve this question. The parties did not brief or otherwise raise this issue with Judge Papak; instead, they focused on whether the Port was exempt from the statute of limitations provision in

§ 30.905 under the general exemption found in § 12.250. Nor did they adequately brief it in their objections. As such, I decline to rule at this time on the question of whether the Oregon Supreme Court would find that the Port is exempt from the statute of limitations provision in § 30.905 based on the common-law rule that general statutes of limitations do not run against the government.

> ii. Whether the Claims are Barred by the Statute of Limitations

Assuming the Port is not exempt from the statute of limitations provision of § 30.905, Defendants argue that its product liability claims are time-barred under that provision. Judge Papak found, however, that there is a question of fact as to when the Port's claims accrued, and therefore, he recommended denying the motion to dismiss on this basis. I agree with Judge Papak's analysis.

To dismiss a claim as untimely on a motion to dismiss, it must be clear from the complaint and any adjudicative facts properly before the court on judicial notice that a plaintiff's claims are untimely. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). I agree with Judge Papak that there is a question of fact as to when the Port's tort claims accrued, such that it cannot be concluded from the face of the Complaint that the claims are untimely. Therefore, the claims cannot be dismissed at this stage of the litigation, even if they are subject to the statute of limitations.

### b. Statute of Repose

Under Oregon law, product liability civil actions for personal injury or property damage are subject to the statute of ultimate repose codified in § 30.905.[4] As Judge Papak explained,

---

[4] The statute of repose provision of § 30.905 is found in either subsection (1) or subsection (2) of the statute, depending on the year of operation. *Compare* Or. Rev. Stat. § 30.905 (1977) (placing the statute of repose in subsection (1)), *with* Or. Rev. Stat. § 30.905 (2010) (placing the statute of repose in subsection (2)).

claims that accrued between 1978 and 2009 were subject to an eight-year statute of repose, while claims accruing after 2009 are subject to either a ten-year statute of repose or, if later, the statute of repose provided for in the state where the product was manufactured or first imported if it was manufactured in a foreign country. *Compare* O.R.S. § 30.905(2) (2010) (providing for a ten-year statute of repose), *with* O.R.S. § 30.905(1) (1977) (providing for an eight-year statute of repose). Judge Papak found that the facts underlying the Port's product liability civil actions will determine whether the claims are barred as untimely by the statute of repose. Furthermore, because the record is devoid of sufficient facts at this stage of the litigation to determine which version of the statute of repose applies to each of the Port's claims, he determined that the Port's claims cannot be dismissed as untimely by the statute of repose.

Defendants object to Judge Papak's findings and recommendations as they relate to the timeliness of the Port's claims under the statute of repose. More specifically, Defendants argue that Judge Papak failed to apply the correct accrual standard for product liability actions under § 30.905. Under Defendants' theory, a court must look at the statute of limitations provision of § 30.905 to determine when the claim itself accrued. Under the pre-2004 version of the statute, then, a claim accrued when the injury or damage occurred, regardless of whether the plaintiff knew about the injury or knew the identity of the tortfeasor. As of January 1, 2004, however, the legislature amended the statue such that the statute of limitations did not accrue until the plaintiff discovered, or reasonably should have discovered, the injury or property damage and the causal relationship between either (1) the injury or damage and the product or (2) the injury or damage and the conduct of the defendant. Accordingly, accrual under the amended version of the statute has a "discovery" element that the pre-2004 statute did not contain.

As a general matter, the Port does not object to Defendants' rules for determining when a product liability civil action has accrued, although they suggest there is some ambiguity in Oregon law related to whether a discovery rule was in place in the pre-2004 version of the statute as well. Regardless, the Port argues that, even under Defendants' proposed rules, a question of fact remains as to when its product liability actions accrued because this is a complex case requiring further factual discovery to determine the actual date of the injury or damage. Under one theory, for example, the injury is ongoing since there is ongoing contamination and new contamination and future damages incurred by the Port. Alternatively, the claims may have accrued before the statute of repose was in effect because Defendants allegedly sold PCBs for decades before § 30.905 was enacted in 1978. Under that theory, the claims could not be time-barred because the statute of repose was not in effect. Ultimately, then, the Port reiterates its argument that its product liability actions cannot be dismissed now because there are outstanding questions of fact precluding a finding that the claims are barred by the statute of repose.

As an initial matter, I agree with Defendants that the statute as it applied to claims that accrued between 1978 and 2003 did not include a "discovery" rule. The Oregon Supreme Court made this clear in *Gladhart v. Or. Vineyard Supply Co.*, 26 P.3d 817, 821 (Or. 2001) ("We conclude, based on the text and context, that the legislature's intent is clear. ORS 30.905(2) does not contain a so-called 'discovery rule.'"). To the extent the Port contends that *Gladhart* was wrongly decided or there is some ambiguity about whether the pre-2004 version of the statue included a discovery rule, that argument is unavailing for several reasons. First, I cannot overturn an Oregon Supreme Court decision on Oregon law under the auspices that the Oregon Supreme Court wrongly decided an issue of its state law. Second, the legislature did not make the statute adopted on January 1, 2004, explicitly retroactive, although it presumably could have

done so.  Instead, it explicitly stated that the amendments, including the discovery rule, applied

only to personal injury or property damage that occurs on or after January 1, 2004.  Statute of

Limitations for Product Liability Civil Actions, 2003 Or. Laws Ch. 768 (H.B. 2080) (2003)

(explaining that the amendments to O.R.S. § 30.905 "apply only to . . . property damage that

occurs on or after the effective date of [the] 2003 Act").   Accordingly, the Oregon Supreme

Court's decision in *Gladhart* is controlling.

I agree, however, with Judge Papak's determination that the Port's product liability

claims should not be denied as untimely under the statute of repose.  As with the above analysis

on whether the claims are time-barred under the statute of limitations, the allegations in the

Complaint and facts available on judicial notice are insufficient to determine when the Port was

injured, and when necessary, when the Port was aware of the injury.[5]  Accordingly, the Port's

claims cannot be dismissed under the statute of repose because it is unclear when those claims

accrued.

## 2.  Whether All of the Port's Tort Claims are Product Liability Civil Actions.

Defendants argue that the Port's negligence, public nuisance, and trespass claims must be

subject to the timeliness requirements of § 30.905 because they fall within the definition of

"product liability civil action" under § 30.900, which defines the term as:

> [A] civil action brought against a manufacturer, distributor, seller or lessor of a
> product for damages for personal injury, death or property damage arising out of:

---

[5] Defendants also object to Judge Papak's analysis of the so-called "look away provision" that was added to the statute of repose provision in 2009.  That provision governs the application of the statute of repose for a product that was manufactured in another state or country.  Defendants argue that Judge Papak's analysis of this provision, namely as it applies to cases where the state of manufacture has no statute of repose at all, should be rejected as unnecessary in this litigation.  I agree that this issue is not ripe for decision in this case. Defendants did not move to dismiss the Port's claims on the grounds that they are untimely under the look-away provision and the parties did not brief this issue.  It is also not clear from the allegations in the Complaint that this issue will be relevant in this case, and to the extent that it does become relevant, the Ninth Circuit has certified this question to the Oregon Supreme Court.  *Miller v. Ford Motor Co.*, 857 F.3d 1016, 1017 (9th Cir. 2017) ("If the state of manufacture has no relevant statute of repose, is a plaintiff entitled to an unlimited period (subject to the statute of limitations) in which to bring suit in Oregon court?").

(1)     Any design, inspection, testing, manufacturing or other defect in a
        product;

(2)     Any failure to warn regarding a product; or

(3)     Any failure to properly instruct in the use of a product.

Or. Rev. Stat. § 30.900 (2010).  As relevant to the case at hand, then, any claim for property

damage that accrued after 1977 arising out of a theory that Defendants (1) made or sold a

defective product, (2) failed to provide adequate warning about the product, or (3) failed to

instruct on the proper use of the product, should be construed as a product liability civil action

for the purposes of determining whether the claim is time-barred under § 30.905.  *See Weston v.*

*Camp's Lumber & Bldg. Supply, Inc.*, 135 P.3d 331, 336 (Or. Ct. App. 2006) (explaining that

O.R.S. § 30.900 applies "to *any* claim based on a product defect or failure to warn or instruct,

including negligence claims").

Judge Papak determined that the allegations in the Complaint do not necessarily require a

finding that the Port's negligence, public nuisance, and trespass claims are properly construed as

product liability civil actions under § 30.900 since it is not clear that the predominant

characteristic of the claims is grounded in a product defect.   Defendants object to this finding.

The Port argues Judge Papak's finding was proper because the majority of wrongdoing, in their

view, is "anchored in [Defendants'] post-sale negligence, through active post-sale concealment,

post-sale failure to warn or recall, and post-sale promotion of use."  Thus, the Port contends, a

jury could determine that the trespass and public nuisance claims are not grounded in product

liability at all, but rather post-sale conduct that caused the negligence, trespass, or public

nuisance to occur.  In general, then, the Port argues that discovery should commence before

ruling on this issue.

The Oregon Court of Appeals has adopted a useful test for determining whether a claim is based on a product defect or failure under § 30.900. *See Weston*, 135 P.3d at 336. The analysis focuses "on the operative facts relied on by the plaintiffs" to determine "from those facts the gravamen or predominant characteristic of the claim." *Id.* (explaining that the predominant characteristic is the one "that is the most significant or dominant in the claim"). Thus, "two guiding principles inform [the] determination of whether a claim is based on a product defect or failure within the meaning of ORS 30.900 and ORS 30.905." *Id.* at 337. First, courts look at "the operative facts alleged in the claim at issue, regardless of how the claim is captioned or characterized by the plaintiff." *Id.* In other words, courts "look beyond the label of the claim to the operative facts alleged" to "discern the gravamen or predominant characteristic of the claim." *Id.* "Second, if the gravamen of the claim is in fact one that is based on a product defect or failure" as defined by § 30.900, then the time constraints of § 30.905 "will apply regardless of the characterization of the theory given to it by the plaintiff." *Id.* at 337—38.

Although the *Weston* test has not been formally adopted by the Oregon Supreme Court, I believe the court would adopt that test if presented with a similar case. I make this determination in part on my assessment that the Oregon Supreme Court has failed to overturn this test when presented with the opportunity to review Oregon Court of Appeals decisions that implemented the test. *See, e.g.*, *Weston v. Camp's Lumber & Bldg. Supply, Inc.*, 138 P.3d 931 (Or. Ct. App. 2006), *rev. dismissed as improvidently granted* 160 P.3d 663 (Or. 2007); *Simonsen v. Ford Motor Co.*, 102 P.3d 710 (Or. Ct. App. 2004), *rev. denied* 115 P.3d 246 (Or. 2005). In addition, I believe the *Weston* test appropriately follows and implements the text of § 30.900 in defining product liability civil actions. Under the statute, the legislature did not specifically enumerate the types of claims that constitute "product liability civil actions." Instead, the term is defined by

the underlying tortious conduct that the statute was meant to include—that is, putting a defective product on the market, failing to warn, or failing to properly instruct on the use of the product. Accordingly, no matter what label a plaintiff gives its claim, it is clear that the statute is concerned with the specific underlying conduct that the plaintiff alleges.

In fact, the Port and Defendants do not dispute whether the Oregon Supreme Court would adopt the *Weston* test. Instead, they dispute what the outcome of that test should be in this case and how much weight I should give to the Court of Appeals' analysis of the claims at issue in *Weston*. In the abstract, I think the question of whether the common law tort claims are actually "product liability civil actions" as defined in § 30.900 generally should not be answered on a motion to dismiss if (1) the answer is not outcome-determinative and (2) the plaintiff alleges a theory that suggests the predominant characteristic of the claim may not be product defect, failure to warn, or failure to inspect. In other words, if the claims could still survive a defendant's motion regardless of whether they are subject to § 30.905, and it is not clear that the claims are correctly characterized as product liability civil actions, then I agree that it is prudent to wait until the facts of the case develop to analyze that issue.

My ruling is particularly grounded in the recognition that the test adopted in *Weston* is fact-intensive. It is not always clear from the face of a complaint what the predominant characteristic of a claim is, and the gravamen of the claim may change during discovery. Accordingly, while it is clearly proper for a court on a motion to dismiss to decide whether a claim is actually a "product liability civil action" under § 30.900, *see Simonsen*, 102 P.3d at 713 (determining on a motion to dismiss whether O.R.S. § 30.905 applies to the claims), it is also proper for a court to defer ruling on that question until later in the litigation when the answer is not fully apparent from the complaint and further discovery will better inform the analysis.

Here, it is prudent to withhold ruling on the question of whether the Port's negligence, public nuisance, and trespass claims are properly construed as product liability civil actions under §30.900.  A ruling on this question now would not be outcome-determinative since, as already explained, there is a question of fact as to whether the Port's product liability civil actions are barred as untimely.  For example, this issue may be moot if I determine the Port's claims accrued before 1978.  In addition, the Port's claims are sufficiently equivocal such that it is not clear beyond doubt that the predominant characteristic of the claims is grounded in product defect.

More specifically, the Complaint suggests at least some of the complained-of harm has resulted from Defendants' allegedly tortious post-sale conduct like "concealing the dangers posed to human health and the environment" and failing to update previous customers and ongoing users of the proper use and disposal of contaminating products, which created ongoing environmental contamination in water and infrastructure allegedly owned by the Port.  Such post-sale conduct would not be subject to the timeliness requirements of § 30.905.  *See Simonsen*, 102 P.3d at 716 (explaining that "some post-sale conduct . . . can give rise to a negligence claim" governed by other statutes); *Sealey By and Through Sealey v. Hicks*, 788 P.2d 435, 441 (Or. 1990) (explaining that a claim for continuing failure to warn of a product's defective and dangerous condition after it is purchased is governed by the statute of limitations provision in § 12.110, not § 30.905), *abrogated on other grounds by Smothers v. Gresham Transfer, Inc.*, 123 P.3d 333 (Or. 2001); *Erickson Air-Crane Co. v. United Techs. Corp.*, 735 P.2d 614, 618 (Or. 1987) (differentiating between defendant's actions after plaintiff's purchase and "the condition of the article at the date of purchase," with only the latter being governed by § 30.905).

Accordingly, because it is not clear that the Port's claims are subject to § 30.905 based on the allegations in the Complaint and because a ruling on that question would not be outcome-determinative now, I DENY Defendants' Motion to Dismiss the public nuisance, negligence, and trespass claims on that theory. Defendants have leave to renew their argument that those claims are governed by the limitations in § 30.905 at summary judgment.

**B.    Whether the Port has Adequately Pled a Claim for Public Nuisance, Trespass, and Post-Sale Failure to Warn**

Defendants also moved to dismiss the Port's public nuisance, trespass, and post-sale failure to warn claims on the grounds that the Port (1) does not have standing to bring the claims, (2) did not adequately allege causation, and (3) cannot bring those claims as a cause of action independent from the product liability actions.

### 1.    *Standing*

Defendants moved to dismiss the Port's public nuisance, product liability, and trespass claims on the grounds that the Port does not have standing to bring the claims. Judge Papak found that the Port's allegations that it suffered special damages not suffered by the public generally, specifically its expending of funds to investigate, monitor, analyze, and remediate PCB contamination to the land it owns are sufficient to establish standing to bring the public nuisance claim. In addition, he found that the Port's allegations that it has suffered property damage to the land it owns from the PCB contamination is sufficient to establish its standing to bring product liability claims. Finally, Judge Papak found that the Port's allegations that Defendants interfered with its exclusive possessory interest in land that it owns by causing the PCBs to intrude on the land is sufficient to establish standing to bring the trespass claim. Accordingly, Judge Papak recommends that I DENY Defendants' motion to dismiss these claims to the extent Defendants argue the Port lacks standing to bring them.

Defendants did not specifically object to these findings. After carefully reviewing Judge Papak's analysis, I agree with his findings and ADOPT this portion of the opinion as my own.

### 2. *Causation*

Defendants moved to dismiss the Port's public nuisance, product liability, and negligence claims on the grounds that the Port did not sufficiently allege that Defendants actions caused harm to the Port. Judge Papak found that the Port's allegations sufficiently pled the element of causation. Defendants did not specifically object to this portion of the F&R. After careful review, I agree with and ADOPT Judge Papak's findings and recommendations as they relate to the Port having adequately alleged Defendants caused the injuries alleged in their public nuisance, product liability, and negligence claims.

### 3. *Whether the Port Can Bring a Public Nuisance, Trespass, and Post-Sale Negligence Claim Indepdently of the Product Liability Claims*

Defendants moved to dismiss the public nuisance, trespass, and post-sale negligence claims on the grounds that they are really product liability claims in disguise. More specifically, Defendants argue that the Port is seeking an improper end-run around product liability law by bringing these claims. To be clear, this is a separate argument from the issue of whether the claims are untimely under § 30.905, as already addressed in this opinion. Here, Defendants assert that the claims themselves cannot be brought independently of product liability actions. I address Defendants' arguments as applied to each claim in turn.

#### a. Public Nuisance

Judge Papak recommends denying Defendants' motion to dismiss the public nuisance claim on the grounds that it sounds in product liability because he found that no Oregon case has ever suggested that a public nuisance claim will not lie if its gravamen overlaps with that of a product liability claim. Defendants recognize that no Oregon court has addressed the question of

whether a public nuisance claim may proceed when the predominant characteristics of the claim

overlap with product liability actions. But they argue that this Court, in the absence of

controlling precedent in Oregon, should look to other jurisdictions to determine whether the

Oregon Supreme Court would allow the Port's public nuisance claim to proceed. In so doing,

Defendants argue that allowing the claim to proceed would put Oregon in the minority, as

Defendants contend that most states have held that public nuisance claims for damages that

sound in product liability cannot proceed.

I agree with Defendants that it is not enough to deny the motion to dismiss simply

because no Oregon court has stated the Port cannot bring its public nuisance and product liability

claims. More precisely, since no Oregon court has directly addressed this issue, my task is to

"predict how the highest state court would decide the issue using intermediate appellate court

decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."

*Lewis v. Tel. Emp. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996) (citation and internal

quotation marks omitted). In order to do so, however, the parties must fully brief the question of

how an Oregon Supreme Court would decide the question of whether a plaintiff can bring a

public nuisance claim for damages when the claim overlaps with a product liability claim. The

parties have not done so here, either to Judge Papak or to this court.

To be sure, Defendants cite to several cases, mostly out of California, where they argue

the court held that such public nuisance claims could not proceed. The Port responds by

summarily arguing that Defendants misinterpret the caselaw and by merely restating what Judge

Papak found. Neither party, however, has provided any sort of analysis of why Oregon courts

would find any particular line of cases or reasoning persuasive. In addition, neither party has

provided any substantial argument regarding national trends on this issue, including by looking

to treatises and restatements as guidance.  With such insufficient briefing, I cannot determine at this stage what the Oregon Supreme Court would do on this issue.  For those reasons, I DENY the motion to dismiss the public nuisance claim.  Defendants may renew this argument at summary judgment.

### b. Trespass

Defendants argue that the Port cannot bring a claim for trespass when the claim is based on an allegedly unauthorized intrusion resulted from a manufacturer's release of an unreasonably dangerous product because in Oregon such claims can only be brought as product liability claims.  Judge Papak found that the Port's allegations were sufficient to support a trespass claim, and he recommended that I deny Defendants' motion.  For the following reasons, I ADOPT Judge Papak's finding and recommendation and DENY Defendants' motion to dismiss the Port's trespass claim.

Defendants point to the language of § 30.900 and the Oregon Court of Appeals' decision in *Weston* to support their argument.  But neither of these authorities stand for the proposition that a trespass claim is not cognizable in Oregon if it is based on allegations that an unreasonably dangerous product intruded on a plaintiff's property.  Section 30.900 merely defines "product liability civil actions" for the purposes of determining whether a claim is timely under other provisions of the statute.  The statute does not state that all claims that have a predominant characteristic of being based on a defective or unreasonably dangerous product must be brought as product liability actions.  Instead the statute simply states that such claims will be construed as product liability actions for determining their timeliness.  Or. Rev. Stat. § 30.900 (2010).  And in *Weston*, the court merely held that the plaintiffs' trespass claim was subject to the limitation period in § 30.905. 135 P.3d at 339.  The court did not hold that the claim itself could not

advance because a trespass claim was not cognizable if it was based on a product defect theory. As such, Defendants have failed to show that a trespass claim is not cognizable in Oregon when it is based on a theory of trespass of an allegedly defective or unreasonably dangerous product.

### c. Post-Sale Negligence

Judge Papak, in a footnote, found that Oregon law allows the Port to pursue a post-sale negligence claim independently from a product liability claim based on Defendants' failure to warn customers and government entities about the dangers of PCBs after they were sold to customers. Defendants object to this finding on the grounds that Oregon does not recognize post-sale "failure to warn" as a viable claim that is independent of Oregon's product liability statute. And, to the extent that Oregon does recognize such a claim, Defendants argue the Port has failed to allege that Defendants discovered a defect in its product after the product was first sold and that they failed to disclose that discovery.

The Port argues that Defendants misunderstand the post-sale negligence claim, which they assert is based on Defendants' actions following the sale of PCBs. Specifically, the Port alleges that Defendants concealed valuable information about the dangers associated with PCBs from both customers and governmental entities. Further, Defendants allegedly misled the public about the applications in which PCBs were used. These actions, the Port argues, all occurred post-sale. Thus, the Port argues it can pursue that failure to warn under a negligence claim, at least to the extent Defendants actively failed to warn costumers about new or additional information concerning the dangers of PCBs after it had sold PCBs to customers.

As an initial matter, Defendants did not move to dismiss the Port's negligence claim on a theory that it is not cognizable as an independent claim from the Port's product liability claim. In any event, Defendants' arguments are meritless. First, Defendants argue that *Sealey v. Hicks*,

stands for the proposition that post-sale failure to warn is not a cause of action independent of a product liability claim. The Oregon Supreme Court in *Sealey* did not actually decide that issue, instead stating: "We express no opinion as to whether a properly pleaded continuing failure to warn would actually state a cause of action independent of the statutory product liability claim." *Sealey*, 788 P.2d at 441 n.14 (Or. 1990), *abrogated on other grounds by Smothers v. Gresham Transfer Inc.*, 23 P.3d 333 (Or. 2001). Thus, the court left open the possibility that a plaintiff could plausibly bring a claim for post-sale negligence based on a defendant's failure to warn.

Indeed, Oregon recognizes a cause of action in negligence for failure to warn. *See Harris v. Nw. Nat. Gas Co.* 588 P.2d 18, 23 (Or. 1978). And the Oregon Supreme Court in *Erickson Air-Crane*, held that the timeliness requirements for product liability actions subject to § 30.905 applied only to acts or omissions that occurred before the product was first purchased for use or consumption. 735 P.2d at 616. For negligent acts or omissions occurring after that date, it held that the claim is subject to the timeliness requirements of O.R.S. § 12.115, which governs negligence claims. *Id.* Presumably, then, a plaintiff may properly bring a claim for post-sale negligence, based on an underlying failure to warn theory, which is not governed by the timeliness requirements of § 30.905.

Finally, I agree with Judge Papak's finding that the Port has adequately alleged that over the course of decades, including after Defendants ceased manufacturing and selling PCBs, Defendants learned new information about the health and safety risks of PCBs that they did not disclose. The Port further alleges that this failure to disclose caused the continued misuse and improper disposal of products containing PCBs, which resulted in ongoing environmental contamination. Such allegations are sufficient for the purposes of pleading post-sale negligence

under the theory that Defendants learned of new dangers associated with PCBs and their disposal after selling them to customers and that Defendants failed to warn of such dangers.

### C. Whether Regulatory Costs May be a Viable and Independent Form of Actionable Tort Damages

Judge Papak found that Oregon law does not forbid the Port from recovering compliance and remediation costs, and they are recoverable as compensatory damages to the extent they are a foreseeable result of Defendants unlawful conduct. Defendants object to this finding specifically on the grounds that they argue the Port cannot shift its Clean Water Act permit costs to product manufacturers.

As an initial matter, the Port has only generally sought compensatory and punitive damages; it did not specifically delineate the basis or amount for those damages. It can be inferred from allegations in the Complaint, however, that the Port has suffered compliance-related costs in abiding by the requirements of the Clean Water Act. Presumably, then, Defendants are arguing that the Port cannot recover the costs incurred in abiding by the Clean Water Act's remediation requirements to the extent the Port seeks to do so.

Defendants' state that "[n]o federal or state court in the country has ever addressed or authorized an attempt to shift Clean Water Act [] permit costs from local dischargers actually using sewer infrastructure to product manufacturers that do not use any such sewer systems at all." This statement, even if true, only goes so far. Unless state or federal law categorically prohibits a plaintiff from recovering its compliance costs under the Clean Water Act, then whether or not a plaintiff may do so is governed by ordinary principles of tort law.

In Oregon, a plaintiff may seek compensatory damages for "such sums as will compensate [the] plaintiff for the injury suffered as a result of [the] defendant's wrong." *Yamaha Store of Bend, Or., Inc. v. Yamaha Motor Corp., U.S.A.*, 798 P.2d 656, 662 (Or. 1990).

By statute, a plaintiff may seek economic damages for those "reasonable and necessarily incurred costs" that resulted from "loss of use of property and reasonable costs incurred for repair or for replacement of damaged property." Or. Rev. Stat. § 31.710(2)(a) (2017). Still, a defendant is generally only liable for injuries that are reasonably foreseeable from the defendant's conduct. *Or. Steel Mills v. Coopers & Lybrand LLP*, 83 P.3d 322, 327—29 (Or. 2004).

Accordingly, whether or not the Port can seek to recover its compliance costs under the Clean Water Act, which presumably includes its costs to remediate PCB-related damage from Defendants, will depend on whether such costs are a reasonably foreseeable result of Defendants' conduct. That is typically a question of fact. *Bailey v. Lewis Farm, Inc.*, 171 P.3d 336, 344 (Or. 2007) (explaining that the court has "cautioned against turning fact-specific decisions on foreseeability into rules of law" (citation omitted)). And it may be the case that certain costs the Port has incurred are recoverable as reasonably foreseeable while others are not. Regardless, to the extent the Port is seeking compensatory damages for its compliance-related costs under the Clean Water Act, the Port is not precluded as a matter of law from seeking such costs at this stage of the litigation. Thus, I agree with Judge Papak's finding and recommendation, and ADOPT his opinion as it relates to this issue.

## CONCLUSION

Based on the above analysis, I ADOPT in part Judge Papak's F&R [43]. I ADOPT Judge Papak's findings and recommendations relating to Defendants' Request for Judicial Notice [15], Supplemental Request for Judicial Notice [37], and the Port's Motion to Strike Defendants' Request for Judicial Notice [33]. I also ADOPT in part Judge Papak's findings and recommendations on Defendants' Motion to Dismiss [14]. Defendants' motion to dismiss the

Port's common-law indemnity claim and attorney fees claims is GRANTED, and the claims are DISMISSED without prejudice. Defendants' motion to dismiss the Port's public nuisance, trespass, post-sale failure to warn, and product liability claims is DENIED. Defendants' motion to dismiss the Port's claim for compliance-related damages under the Clean Water Act is also DENIED. I otherwise rule as outlined above.

IT IS SO ORDERED.

DATED: This __22__ day of September, 2017.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge